The defendant was indicted in Georgetown district, before Gkimke, J., for keeping a billiard table without licence, contrary to the act of assembly in such case provided, and was found guilty. A motion was submitted and argued in this court the 10th January, 1806, before all the judges, in arrest of judgment, by Duncan, for the motion ; and Pringle, Attorney General, against it. The court took time to advise, and now at this meeting, 10th May, 1806, Bre. yard, J., delivered the unanimous opinion of the court.
The motion to arrest the judgment is on the ground, that the keeping a billiard table without licence, is not an indictable offence, and that the forfeiture for doing so, according to the acts of assembly on the subject, cannot be recovered or exacted by way of indictment. Some objections have also been taken as to the form of the indictment.
By the act passed in 1784, P. L. 340, “ Any person who shall not be duly licenced, who shall keep a billiard table, shall forfeit £50 sterling for every such offence, to be recovered by bill, plaint, or in. formation, in any court of record, by any person who shall inform or sue for the same. One half to go to the informer.” An act of December, 1792, empowers the commissioners of roads to grant li-cences for keeping billiard tables, (except as to Georgetown,) and subjects persons who shall presume to keep such tables without license, to the forfeiture of £50, to be recovered as directed by the former act. An act of 1799, authorizes the commissioners of the roads throughout the State, to order such licences to be granted. The commissioners of the streets in Georgetown, were empowered by an act of February, 1791, to demand and receive the money required to be paid for keeping billiard tables in Georgetown. These *83 are all the legislative acts that relate to the subject. Keeping, and presuming to keep, must be construed to mean the same thing; and it must now be considered as proved, that the defendant has presumed to keep, and has actually kept a billiard table without being licenced, Contrary to law. The only question of importance to be considered is, whether the forfeiture can be properly recovered or exacted by way of indictment ? It is laid, down by Hawkins, P. C. chap. 25, § 4, “ That where a statute makes a new offence, which was no way prohibited by the common law, and appoints a parti, cular manner of proceeding against the offender, without mention, ing an indictment, it shall not maintain an indictment, because the mentioning the other methods of proceeding, seems impliedly to exclude that of indictment; unless there should be a substantive prohibitory clause.” If the method of proceeding be pointed out, it must be pursued; otherwise, if no method be prescribed, the penalty must be recovered by action of debt. Bac. Abr. Tit. Stati Let. K. cites Poph. 175. See Cro. Jac. 644. 3 Burr. 1418. Cowp. 524.
The mode prescribed for the recovery of the penalty for the of-fence of keeping a billiard table without licence, is “by bill, plaint, or information.” Indictment is not mentioned, and cannot be un. derstood as intended, unless the word “ bill” can be construed to mean bill of indictment, which we are of opinion cannot be done; and, therefore, the mode of proceeding used in this case cannot be held good. If any of the modes prescribed by the act can be pur. sued, the proceeding by indictment must be wrong, because not conformable to the act; and if no one of these modes can be pur. sued, then the acts of assembly must be construed as if no particu. lar mode or manner of proceeding were prescribed, and in that case the penalty must be recovered by action of debt. The phraseology of the acts appears to have been borrowed from some English statute, without adverting to the meaning of the words. The word “ bill,” means Bill of Middlesex, the leading process in the King’s Bench in England. -It is a kind of capias ad respondendum, and answers the same purpose as a capias in the Court of Common Pleas. 8 Bl. Com. c. 19. If the word has any meaning in this country, as used in the act, it must mean the writ of capias, and I am of opinion it may be construed to mean the common writ of capias ad respondendum. The word “plaint” cannot be construed to mean any thing but'what it imports in English, namely, the first process of an inferior court; a process not in use in this State. “ Information” must mean that sort of information, which by the law of England is partly at the suit of the King, and partly that of a subject, as a mo *84 iety of the penalty goes to the informer. These sort of informs, tions are a kind of qui tam actions, carried on by a criminal, instead of a civil process. 4 Bl. Com. 303.
Note. If the Attorney General enter a nolle prosequi, the informer may, notwithstanding, proceed for his part. 1 Leo. 119. Cro Eliz. 583. Com. Dig. “ information.” See 2 Dali. 112, a distinction between informations filed by tho Attorney General and those filed by him at the relation of a private person. The former are always ex officio. The latter are, in a great measure, private suits. See 3 Burr. 1812,1270, 1305. Doug. 227. See Bac. Abr. qui tam.
It has been said, that by our State constitution, which declares, that all prosecutions shall be carried on in the name and by the authority of the State, this mode of proceeding by information is taken away ; but I am of opinion tliat this sort of information is not taken away, as it is in truth but a civil remedy, to recover a particular sum, which the party from whom it is demanded, is bound by law to pay for keeping a billiard table, and does not subject him to the loss of life, or liberty', or to corporal punishment. The acts say, expressly, that the penalty shall be recovered by any person who shall inform or sue for the same. I am of opinion the informer might have recovered the penalty by suit at law, or by information in nature of a qui tam action, and that an indictment cannot be maintained ; and, consequently, that the judgment cannot be maintained, We are all of opinion the judgment ought to be arrested.
Judgment arrested.